May it please the Court, I'm Matt Adams with Northwest Immigrant Rights Project for the Petitioner. And if I may reserve one minute for rebuttal. You can. Watch your time on the clock there. Thank you. This case examines the scope of the reinstatement provision and its implementing regulations. Section 241A5 of the Immigration Nationality Act allows for the reinstatement of prior orders of removal. Explicit language includes only orders of removal, not orders of deportation or exclusion. These are distinct types of expulsion orders and are not readily interchanged. When provisions of the Act sought to include the different types of orders, they specifically listed them. If there were no distinction, these provisions would have included both orders of deportation and removal. Now, Respondents contend that Section 309D2 of IRA-IRA expands the scope of the reinstatement provision to include prior orders of deportation. While 302D, which deals with transitional cases, may be read to include, to expand the scope, to include those cases, those deportation orders that came under the transitional cases, it should not be read as a blanket extension of the reinstatement provision. This is evident from the fact that Congress eliminated the very clear language of the old reinstatement provision that applied the reinstatement provision to orders of deportation, quote, whether before or after, unquote, the date of enactment. If Congress had desired the new, more stringent reinstatement provision to be applied to these prior orders of deportation, it would have left in this clause whether before or after the date of enactment. Moreover, legislative history shows that both the House and the Senate considered but ultimately rejected versions of this new reinstatement provision that included that clause, applying the reinstatement provision to orders whether before or after the date of enactment. Respondent would have this Court ignore the actual language of the new reinstatement provision, which specifically eliminated this catch-all phrase, whether before or after the date of enactment. In Castro-Cortez, this Court did not reach the issue of whether the reinstatement provision was impermissibly retroactive because it found that the language was clear. The statutory language in the history was made evident that Congress did not intend the reinstatement provision to be applied to prior reentries that occurred prior to April 1st of 1997. But that same language and that same history makes clear that Congress did not intend it to be applied to orders of deportation prior to April 1st of 1997. In Castro-Cortez, this Court focused on the more narrow issue, the date of reentry, because all the Petitioners in those consolidated cases had reentered prior to April 1st, 1997. But the language that the Court relied on is this same phrase, whether before or after the date of enactment, and it is uncontested, Respondents don't contest, that that language modifies not the date of reentry, but it modifies the date of deportation. Kennedy. Didn't Castro-Cortez leave open the issue? It didn't really address the issue that we've got here. That's correct. It certainly isn't precedent. It's just not precedent one way or the other. But its analysis at examining the language of the prior reinstatement provision and comparing it to the current reinstatement provision is certainly instructive. And the language that it relied on is language that is modified, not the date of reentry, but the date of deportation. So it's certainly instructive to our analysis. And that's why we contend that the new statutory provision is clear that Congress did not intend it to apply to orders prior to April 1st of 1997. It's also evident that Section 309d-2 only applies to transitional cases by the fact that it was placed not in the Immigration and Nationality Act, but rather under the transitional rules of IHRA-IHRA. How do you deal with the Ninth Circuit's opinion in Gallo-Alvarez? I mean, putting aside the merits of the argument you're making, which I'd say, apart from Gallo-Alvarez, is sort of a fair argument there's a case on each side. But we're a panel. We're not an en banc court. And it appears that Gallo-Alvarez, rightly or wrongly, decided this issue adversely to you. It is true that the Gallo-Alvarez opinion states that the reinstatement provision applies to situations where the predicate order was issued prior to the 1996 revision. So if we just stop right there, putting aside whether Gallo-Alvarez could be challenged en banc, if Gallo-Alvarez holds that, then we as a panel are bound to apply that. And we could – someone could write a little essay criticizing it and suggesting the case should be heard en banc, but we can't overrule it unless you can explain to us why it's not a precedent. The reason why that shouldn't bind this Court is because the Gallo-Alvarez decision made that flat assertion without any analysis or discussion. And so what? This Court has clarified in many cases like Sorenson v. Meek where a court assumes a point without any further discussion. It's not binding on future panels. I'm not aware of that. So what – because, I mean, if it were just a dictum and not necessary to their decision and just sort of they're just talking, I understand that. But if a court decides something that's necessary to its decision and it just doesn't give a lot of reasoning, what's the authority that says we can disregard it? The authority are cases like Sorenson v. Meek, which is at 239 F. 3rd, 1140. And State – And what does that say? Tell me what the language – the reason I'm questioning you is I sort of find it astounding. So if there's a case that says this, I'll look at it. The language of that case in Sorenson – It's 239 F. 3rd, 1140 at page 1149 that states where a case assumes a point without discussion, it does not bind future panels. If it assumes, yeah. But that – that Gallo-Alvarez doesn't read like assuming such and such. It's important to note that Gallo-Alvarez made that flat assertion and then it's cited to Castro-Cortez. But that was a mistake given that Castro-Cortez, as you mentioned, specifically left open a question. But we can't say that that panel made a mistake, I don't think. Well, maybe you – maybe other members of the panel will view that differently. I guess what I'm – I'd like to ask a question about Gallo-Alvarez. Isn't the statement in Gallo-Alvarez arguably dicta? Because that case, the Petitioner had been subject to voluntary departure rather than a deportation order, as in this case. And indeed, the court remanded that case to the district court to find whether he was even subject to reinstatement one way or the other because there was a whole separate issue of whether he had lawfully reentered or not. And so the court didn't even reach, for example, the due process arguments, instead remanded the case. One other point about that Gallo-Alvarez decision, in making that flat assertion, it also cited to a district court decision Mendez-Tapia. But that Mendez-Tapia decision, the district judge issued that prior to this Court's ruling in Castro-Cortez. Okay. But, I mean, I saw that in your brief. But, again, to me at least, it's a so what, because they cite Castro-Cortez. So they're giving their statement. If they relied on a district court case, it's not binding on us anyway. What's binding on us is what they decided. If Judge Nelson suggests an argument that it may be a dictum, if it's a dictum, I guess we can pass by it and get to the merits. So we'll look at that. All right. Well, continuing on with the language of 309d2, as I mentioned, that provision which the government attempts to utilize to expand the scope of reinstatement is not codified in the Act, but rather is only located under the transitional rules of IRA-IRA. And as such, does not, and the transitional, Section 309 is purely one dealing with transitional cases, effective dates, and transitional rules. It makes no substantive changes to the Act. And with the passage of the transitional cases, these transitional rules will expire. If Congress had intended 309d2 to permanently alter a substantive provision of the Immigration and Nationality Act, it would have placed it in the Act itself. And it would not have, and therefore its location within the transitional rules of IRA-IRA as opposed to the permanent rules in the Immigration and Nationality Act are very telling. It's also important to note the congressional designation, the title, it's a transitional reference. And I'm reserving one minute. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm Anthony McCashmore, and I present the Respondent in this case. This Court has previously decided all three issues raised by Petitioner against him. Concerning Issue 1, in Gallo-Alvarez, this Court held that 8 U.S.C. 1231a5 permits the INS to reinstate an order of deportation. In fact, that was the question before the Gallo Court, and they specifically said this is the question and this is how we hold. The statute permits the INS to do so. That's the Court's own language. And, in fact, in a footnote later on, they refer, as Judge Gould mentioned, to Castro-Cortez and said, while it says removal, it also applies to deportation orders. So they did infer back. No. Isn't this case distinguishable because that was a case of voluntary departure? Only in the – it's not distinguishable, Your Honor, in this case because they were presented with this very question while the – while the – it is true that it was a case of voluntary departure, but in the Gallo Court, they specifically looked at the question of whether or not they could reinstate an order of deportation. That is the Court's own language, and they held that it does permit the INS to do so. But wasn't that a dictum, then, about the case before it? No, Your Honor, I would disagree, because it says very clearly we hold that the statute allows the INS to do so, to reinstate that order of deportation. I understand your position. It's only – it's only distinguishable in the case that – in the small aspect that he voluntarily departed the United States, but it's still within the realm of an order of deportation. In fact, they used the term order of deportation as well in describing the question. Where does it say it holds, then? In the first paragraph of Judge Thomas's decision, the consolidated case presents the question of whether 8 U.S.C. 1231.85, the statute prevalent in this particular case, permits the Immigration and Naturalization Service to reinstate an order of deportation primarily pertaining to an alien who was granted voluntary departure in lieu of deportation. We hold that the statute allows the INS to do so. And then further on, it makes the reference to Castro-Cortez in footnote 3 of the opinion. I'm familiar with that. Yes, okay. Thank you, Your Honor. Go to your second reason. Thank you. Assuming reinstatement applies. Thank you, Your Honor. I want to know how you distinguish the Padilla case. I would not distinguish it. I'd say Padilla controls. Padilla controls the Court's outcome in Issues 2 and 3. Here we have Perez-Gonzalez, unlike Padilla, applied for permission to reapply for reentry before his prior deportation was reinstated. Well, that is true, Your Honor. But in the majority opinion in Padilla, they make no mention of that, of the application and reapplying issue that was brought up in the concurrent opinion of Judge Berzon. The point is that the majority held, first of all, that the statute is clear, that it bars any relief from deportation. And in fact, the factual situations are very much, in the majority opinion, are very much indistinguishable from that of Mr. Perez in this particular case. Mr. Perez had a ---- How can the reinstatement provision bar him from seeking relief before the INS has even sent him notice of reinstatement? He was seeking relief before he had any notice. Well, there's two answers to that question, Your Honor. First, as the agency issued its opinion regarding the reapply application, it's not applicable to aliens who have not, who have already in the United States. They should have applied for readmission. Now, I understand ---- I saw that in your brief, but ---- I understand Judge Berzon looked at that in her concurring opinion. But as far as the Respondent is concerned, that's not the law of this particular circuit on this particular issue. Well, I looked it up under 245 H.C.F.R. 212.2e. The regulations explicitly state that consent to reapply is available to aliens within the United States who are seeking adjustment of status. Several additional regulatory provisions clearly contemplate applications from previously removed immigrants now living in this country illegally. That may be, Your Honor. But not only is he ---- was he inadmissible on that particular charge. And, in fact, in Judge Berzon's argument, she said perhaps had he filed it, he may have been eligible. Well, here we know he filed it, and he wasn't eligible. He wasn't eligible for a number of reasons, not of which is the misrepresentation, which was the same misconduct that Mr. Badia was charged with as his inadmissibility, but he has at least three other issues of inadmissibility that didn't permit him to adjust his status. So in this particular ---- But there was an issue before us in this case. In this case, following the Badia court, which simply said that in two aspects, in Badia he was not eligible for relief of ---- from removal. One, that the statute bars it, and that is true in this case today. The statute bars it. That has not changed. The law is ---- in this circuit says so. And, secondly, that under a second aspect, that Mr. Badia is ineligible for adjustment based on his misrepresentations in his adjustment application. He said he had never been removed or deported. That obviously is not correct. But is that the issue before us, this Court at this time? I mean, that he ultimately is ineligible? No. The issue ---- You're asking the question about ---- Right. The issue, number two, is whether or not it would bar his adjustment application. And this Court in Badia says, yes, it will. I mean, that is the majority hold that gets it. Even before he receives notice ---- he files before he receives notice of reinstatement. Yes, Your Honor, because I assume that during the adjudication of this particular case, the concurrent opinion was presented to majority, and the majority did not ---- did not accept it. The majority makes no mention in its opinion of the application to reapply for permission to enter the United States. Absolutely none. I'll give somebody else a chance now. Okay. Thank you, Your Honor. Not only does it foreclose issue two, it also forecloses issue three, which is the due process challenge. As Badia mentioned, and the facts are indistinguishable, if, as was the case in Badia, the Petitioner in this particular case cannot even demonstrate a plausible ground for relief because he cannot challenge any of the three relevant determinations pertinent to a reinstatement order. That is verbatim out of Badia. First, as Badia was, Perez is an ally. There's no question of that. Second, he was certainly previously removed from the United States. There is no question of that. Now, whether or not you find the Respondent maintains that Gallo controls whether it's removal or deportation by the language that it says is required. Is this the standard procedure? Somebody comes in with his family, an attorney, upon a noticed hearing, and he's immediately taken into custody and not given an opportunity to consult with anybody? No, Your Honor. Actually, in this particular case, he was in the country for a while since he reentered. I understand that. I'm talking about the physical circumstances by which he was taken into custody. Didn't he show up at the hearing with his family? That was just summarily grabbed. No, Your Honor. I wouldn't categorize it as summarily grabbed. He had no notice he was going to be arrested at that hearing. He was told to appear. He walks in and they arrest him. No, Your Honor. He did have notice because he filed the adjustment of application status. And when they reviewed his prior immigration hearing, they said, wait, what? Wait a second. You've been previously removed from the United States. And then they issued the particular notice to him. And in that notice, he does not, in fact, he firmly states he doesn't contest anything concerning the reinstatement order. But didn't he just physically? My understanding was he shows up at the office for the purposes of pursuing this issue, right? Probably in pursuing his adjustment of status application. What happened to him when he comes in? Was he summarily arrested? No, Your Honor. In fact, if I believe the facts show, there might have been a relative petition filed. And that petition was eventually said okay. And then he filed his adjustment of status based on that. And then he put in a long. He came in on the 9th of October, right, for a hearing on what was pending at that time? To say a hearing, yes. He appeared before an immigration official at that time. Yes. Okay. And he was summarily taken into custody, right? I'm not sure if he was summarily taken into custody. I did not see that in the record. It may be in the record someplace. But that's not what I, in fact, I don't believe he's in custody right now at all. Okay. He's, you know, even though he has a prior conviction, that's not what his reinstatement order was based on. So I do not believe he's in custody right now or was before. But, again, it could be a mistake. As such, Petitioner's case is controlled by both Padilla and Gallo in this particular case. How do you spell Padilla? I know it's in your brief, but just. P-A-D-I-L-L-A.  Subject to the Court's questions. That concludes the government's hearing. I'm looking back at my notes. I'm sorry I don't have the blue brief. But the blue brief on page 7 and 8 said, When Pierre Gonzales arrived at the office with his wife, daughter, and attorney, he was immediately placed under arrest. Is there a record site for that? I'm not sure that there is. I have the blue brief with me. I should have it. You said 7 and 8, Your Honor? Yes. There's no record site there, Your Honor. All right. Well, ask. I mean, I didn't see it in the record. Okay. Thank you. All right. Thank you, Your Honor. Thank you. Respondent is right. Petitioner is not in custody. He's in Mexico. He was arrested and deported. He asked if there was a record site for the fact that he was in Mexico. No. That's one of the due process challenges here is that there is no record of this reinstatement procedure. They give him this notice without any opportunity to challenge it. Summary type of procedure. Exactly. How do you deal with the Padilla case that they cite on the issue of whether if the reinstatement provision applies, it precludes the adjustment of statehood? The Padilla case said there was no plausible form of relief because the petitioner was not attacking one of the three underlying elements of reinstatement. In this case, petitioner is attacking the second underlying element. He's attacking the fact of whether he's been ordered removed. And since he submitted his arguments, he has a plausible form of relief. In Padilla, the petitioner wasn't even questioning. He acknowledged that the or she acknowledged that the reinstatement provision applied to someone in her case. Her argument was based solely then on her application for adjustment of status. You have, I'll give you about 30 seconds. Okay, thank you. Also, I think it's important to note that no court up until now has addressed the due process challenges. They've acknowledged them. Alvarenga found they didn't need to address them because they had he was only challenging the underlying order of removal. Padilla didn't because they didn't have plausible form of relief. This case does present someone who was challenging the application of the reinstatement procedure and did have other applications for benefit, adjustment of status, and therefore is in a position to present these important issues to this Court. All right. Thank you. Okay. Thank you again. Thank you, counsel, for their argument. It was very helpful. The case is argued to be submitted. The next.
judges: Dw Nelson, Fisher, Gould